IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| Cynthia Briscoe, <br> Tara Taylor, and <br> Amy Robbins, <br><br> *Plaintiffs,* <br><br> vs. <br><br> FCA US LLC, <br><br> *Defendant.* | § <br> § <br> § <br> § <br> § <br> § <br> § Civil Action No. 4:17-cv-172 <br> § <br> § <br> § <br> § |

## PLAINTIFFS' COMPLAINT

**To the Honorable United States Judge of Said Court:**

COME NOW, Cynthia Briscoe, Tara Taylor and Amy Robbins (hereinafter referred to as "Plaintiffs"), and respectfully file this Complaint against FCA US LLC (hereinafter referred to as "Defendant"), and in support hereof would state and show the following:

### I. Parties

1. Plaintiff Cynthia Briscoe is the surviving spouse of Larry Scott Briscoe, deceased. She resides in and is a citizen of Texas.

2. Plaintiff Tara Taylor is a surviving daughter of Larry Scott Briscoe, deceased. She resides in and is a citizen of Texas.

3. Plaintiff Amy Robbins is a surviving daughter of Larry Scott Briscoe, deceased. She resides in and is a citizen of Texas.

4. Defendant FCA US, LLC is an entity formerly known as Chrysler Group LLC, incorporated in Delaware, with its principal place of business in Auburn Hills, Michigan. Defendant's sole member is FCA North American Holdings, LLC, an entity incorporated in Delaware with its principal place of business in New York. FCA North America Holding LLC's sole member is Fiat Chrysler Automobiles N.V., a publicly traded company incorporated in the Netherlands with it principal place of business in London. Service of process upon this Defendant may be had by serving its registered agent for service, CT Corporation System, at 1999 Bryan, Suite 900, Dallas, Texas 75201.

## II. Jurisdiction

5. This Court has jurisdiction over the lawsuit under the provisions of 28 U.S.C. Section 1332.

6. The parties to this lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

## III. Facts

7. On or about December 6, 2016, Larry Scott Briscoe was driving a 2004 Dodge Ram 1500 (VIN# 1D7HA18D94S575551) traveling southbound on FM 195 in Lamar County, Texas.

8. The subject vehicle was designed by Defendant.

9. The subject vehicle was manufactured by Defendant.

10. The subject vehicle was also assembled and tested by Defendant.

11. A northbound vehicle caused a collision sequence that ultimately caused Mr. Briscoe's to be struck.

12. At the time of the accident, Larry Scott Briscoe was properly seated and properly wearing the available seat belt.

13. However, despite being properly seated and properly wearing the available seat belt, Larry Scott Briscoe sustained fatal injuries when the vehicle failed to protect him because it violated several crashworthiness principles.

14. There are five (5) recognized crashworthiness principles in the automobile industry/throughout the world. They are as follows:

    a. Maintain survival space;

    b. Provide proper restraint throughout the entire accident;

    c. Prevent ejection;

    d. Distribute and channel energy; and

    e. Prevent post-crash fires.

15. When the National Highway Traffic Safety Administration (NHTSA) created the Federal Motor Vehicle Safety Standard (FMVSS) in the late 1960's, the preamble to the safety standards included the above definition of crashworthiness.

16. Crashworthiness safety systems in a vehicle must work together like links in a safety chain. If one link fails, the whole chain fails.

17. Vehicle manufactures have known for decades and have admitted under oath that there is a distinction between the cause of the accident versus the cause of an injury.

18. Indeed, vehicle manufacturers have known for decades that crashworthiness is the science of preventing or minimizing injuries or death following an accident through the use of a vehicle's various safety systems.

19. Lee Iacocca, former President of Ford Motor Company stated, while President and CEO of Chrysler, that "Every American has the right to a safe vehicle."

20. General Motors has stated in the past that, "The rich don't deserve to be safer…Isn't it time we realized safety is not just for the pampered and the privileged? Safety is for all."

21. Volvo has stated that it has a goal that no one is killed or injured in a Volvo vehicle by the year 2020. Volvo has also stated that, "Technologies for meeting the goal of zero injuries and fatalities are basically known today – it is a matter of how to apply, finance, distribute and activate."

22. Because every American has the right to a safe vehicle, because safety is for all, and because technologies for meeting the goal of zero injuries and fatalities are basically known today, it is incumbent upon auto manufacturers to investigate and find out what other automakers are doing with regards to safety and to apply those same methods or technology to their own vehicle.

23. Furthermore, an automaker cannot choose to use safer technology in Europe, Australia, Japan, or some other country and refuse or fail to offer that same safety technology to consumers in America.

24. While there are minimum performance standards which an automaker is supposed to meet before selling a vehicle in the United States (the FMVSS), these minimum performance standards to not adequately protect the public.

25. Indeed, Joan Claybrook, former administrator of the NHTSA, wrote a letter to major auto makers where she said, "Our federal safety standards are and were intended to Congress to be minimum standards. The tragedy is that many manufacturers have treated the standards more like ceilings on safety performance rather than floors from which to improve safety."

26. Additionally, in September of 2014, a Congressional report was issued in response to the General Motors ignition switch recall. The report questioned whether NHTSA had the technical expertise, culture and analytic tools needed to address safety issues. The report stated, "NHTSA also lacked the focus and rigor expected of a federal safety regulator." It was also stated that NHTSA staff has a "lack of knowledge and awareness regarding the evolution of vehicle safety systems they regulate."

## IV. Cause(s) of Action as to Defendant

27. It was entirely foreseeable to and well-known by Defendant that accidents and incidents involving their vehicles, such as occurred herein, would on occasion take place during the normal and ordinary use of said vehicle.

28. The injuries complained of occurred because the vehicle in question was not reasonably crashworthy, and was not reasonably fit for unintended, but clearly foreseeable, accidents. The vehicle in question was unreasonably dangerous in the event it should be involved in an incident such as occurred herein.

29. Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question.

30. As detailed herein, the vehicle contains and/or Defendant has committed either design, manufacturing, marketing, assembling, and/or testing defects.

31. Defendant either knew or should have known of at least one safer alternative design which would have prevented the fatal injuries to Larry Scott Briscoe.

32. In addition to the foregoing, Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the vehicle was unreasonably dangerous as designed, manufactured, assembled, marketed, and/or tested because Defendant knew and/or should have known of the following, non-exhaustive list of defects:

    a. The vehicle fails to provide proper safety in frontal offset or oblique type accidents;
    b. The vehicle fails to provide adequate occupant protection during offset or oblique type impacts;
    c. The vehicle fails to provide any meaningful lower leg protection during frontal impacts;
    d. The Defendant failed to properly reinforce the toe-board, foot-well and floor-pan area;

    e.    The Defendant failed to adequately protect the lower legs;
    f.    The Defendant failed to use boron steel, UHSS or ultra high strength steel in the floor-pan, foot-well and toe-board area;
    g.    The Defendant failed to channel crash forces away from the floor-pan, foot-well and toe-board area of the vehicle;
    h.    The vehicle violated principles of crashworthiness;
    i.    The Defendant failed to conduct testing with ATD's that have load cells on the lower legs;
    j.    The Defendant failed to use knee bags;
    k.    The Defendant failed to use leg sweepers;
    l.    The Defendant failed to use a cross car beam that would protect the lower legs;
    m.    The Defendant failed to conduct FEM type analysis to determine how different structure and different material would add to the protection of the lower legs;
    n.    The Defendant failed to conduct computerized accident simulations to determine how to provide lower leg protection;
    o.    The side structure is weak and inadequate;
    p.    The side structure fails to use multiple side door beams;
    q.    The side structure fails to use boron, UHSS or other type of ultra strength steel;
    r.    The side structure fails to channel energy though the pillars, rocker, sill, roof and header;
    s.    The side structure failed to perform like the Volvo SIPS design;
    t.    The vehicle failed to contain side, head, thorax combination or side currant bags; and/or
    u.    The vehicle violated principles of crashworthiness.

33. Defendant failed to conduct proper testing and engineering analysis during the design, development and testing of the vehicle.

34. Defendant was negligent in the manufacture, assembly, marketing, and/or testing of the vehicle in question.

35. In designing a vehicle, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death;

36. Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

37. If the potential risks, hazards, and/or dangers can't be eliminated, then they should be guarded against.

38. If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

39. A company that does not conduct a proper engineering analysis that would help it to identify potential risks, hazards, and/or dangers that could seriously injure someone is negligent.

40. Based upon information and/or belief, Defendant either used or knew about advanced safety features used in Europe, Australia, Japan and some other country and chose not to offer those safety features to American consumers.

41. Defendant's occupant protection philosophy and design philosophy are utilized in various model vehicles, including ones sold overseas in other markets.

42. When Defendant designed the subject vehicle, it did not reinvent the wheel. Defendant used an enormous amount of human capital which had been acquired from numerous different engineers which had worked on many prior vehicle. This knowledge would have been utilized in different aspects of the various designs of the subject vehicle.

43. Defendant is currently in exclusive possession and control of all the technical materials and other documents regarding the design, manufacture, and testing of the

vehicle in question. Defendant is also in possession of what, if any, engineering analysis it performed.

44. However, it is expected that after all of these materials are produced in discovery and/or after Defendant's employees and corporate representatives have been deposed, additional allegations may come to light.

45. Lastly, the materials from other models, years, and countries will provide evidence regarding what Defendant knew, when they knew it, and about what was utilized or not utilized as well as the reasons why.

46. The foregoing acts and/or omissions, design defects, and/or negligence of Defendant were the producing, direct, proximate, and/or legal cause of Larry Scott Briscoe's fatal injuries and Plaintiffs' damages.

## V. Damages to Plaintiffs

47. As a result of the acts and/or omissions of Defendant, Plaintiffs have suffered past and future; loss of care, maintenance, support, services, advice, counsel, reasonable contributions of pecuniary value, loss of companionship and society, loss of consortium, and mental anguish as a result of the death of Larry Scott Briscoe.

48. As a result of the acts and/or omissions of Defendant, Plaintiffs have become obligated to pay reasonable and necessary funeral, and burial expenses as a result of the fatal injuries to Larry Scott Briscoe.

49. The above and foregoing acts and/or omissions of the Defendant, resulting in the fatal injuries to Larry Scott Briscoe have caused actual damages to Plaintiffs in excess of the minimum jurisdictional limits of this Court.

## VI. Prayer

50.  For the reasons presented herein, Plaintiffs pray that Defendant be cited to appear and answer, and that upon a final trial of this cause, Plaintiffs recover judgment against Defendant for:

   a.  actual damages;
   b.  prejudgment and post-judgment interest beginning December 6, 2016;
   c.  costs of suit; and
   d.  all other relief, general and special, to which Plaintiffs are entitled to at law and/or in equity, and/or which the Court deems proper.

Respectfully submitted,

**The TRACY firm**


  /s E. Todd Tracy
E. Todd Tracy (Attorney-in-Charge)
State Bar No. 20178650
EToddTracy@vehiclesafetyfirm.com
Stewart D. Matthews
State Bar No. 24039042
SMatthews@vehiclesafetyfirm.com
Andrew G. Counts
State Bar No. 24036408
ACounts@vehiclesafetyfirm.com
4701 Bengal Street
Dallas, Texas  75235
(214) 324-9000 – Phone
(972) 387-2205 – Fax

**Attorneys for Plaintiffs**